Case number 15-1149 at L. Monica J. Linden, Montana State Auditor ex officio, Montana Commissioner of Securities and Insurance Petitioner v. Securities and Exchange Commission. Mr. Toomey for the petitioner, Mr. Berger for the respondent. Mr. Berger for the petitioner, Mr. Berger for the respondent. Mr. Toomey. Good morning, Judge Ginsburg, and may it please the Court. The rule before us today defies the clear direction of Congress that preemption under the Qualified Purchaser Statutes may only occur when the Commission actually imposes qualifications on purchasers. There must be meaningful qualifications that identify those investors who do not require the protection of state law. The Commission has imposed no such qualifications here. Under its rule, preemption occurs whenever literally any person is offered a purchase of securities under a Tier 2 offering of Regulation A. Is there anything anywhere else that limits the qualifications of the offerees in a Tier 2 sale? No, Your Honor, nowhere else. This rule violates the plain meaning of the Securities Act. It exceeds the authority delegated to the Commission by Congress, and it strips from millions of vulnerable investors protections that the states have provided for 100 years. So the SEC effectively, in effect, said everyone's qualified because there's no need for special protections here. That's what the rule says. Any person is a qualified purchaser. That's the rule. It effectively reads the qualified purchaser requirement out of the statute by saying it's everybody. I'm not sure why it reads it out as opposed to addressing it and saying, all right, in this context, we think everyone's qualified. Well, any is not a qualification on purchasers, Your Honor. The term qualified purchaser has a clear meaning both under the plain language, under the structure of Section 18. Well, it has a clear meaning that's been delegated to the SEC to determine in each case. It varies from one class of issuance to another. That the Commission certainly has discretion to tailor the definition of qualified purchaser to different categories of securities. But the power to tailor doesn't mean it can disregard the requirement altogether. And this term qualified. I certainly grant you that it doesn't mean that the SEC can disregard the matter and just not address it. But it seems here they've addressed it and determined that qualified, anyone should be deemed qualified for this issuance. Yes. Well, Your Honor, our position is you can't have a definition of qualified purchaser that doesn't disqualify anyone. That's just not what Congress intended. This is what Congress intended when it passed Section 18.3, which the JOBS Act incorporates. Congress said, in all cases, the Commission's definition must be rooted in the belief that qualified purchasers are sophisticated investors, capable of protecting themselves in a manner that renders regulation by state authorities unnecessary. And this is exactly how the term qualified has been used in other contexts. Now, what were you just reading from there? This is the House Commerce Committee when it passed the 1986 law. But it's not in the law. It's in the committee report. And the Senate committee report said very much the same thing. It was never enacted. Yes, Your Honor. In fact, it was never enacted. It's long legislative history, but it is at best only legislative. It is legislative history, Your Honor. But we also think that the plain language of the term, the manner in which Congress essentially— If you're going on plain language, then you don't need legislative history. If you're going on legislative history, you're not helping plain language. Your Honor, this Court has said when you look at Chevron Step 1, you look at plain language, you look at statutory structure, you look at usage of the term in other contexts, and you can look at legislative history. All those factors weigh in our favor here. There has to be some qualifications imposed on investors. You can't just open it up to everybody. And this is why this case is so important. When Congress—Congress reserves to itself under Section 18 the power to categorically preempt securities altogether. The power given to the commission is far more narrow. It is just to qualified purchasers. And if the commission is allowed to—if this rule is upheld, then it can be able to preempt any other category of securities at once. All we need to do is issue a similar rule saying any person who's offered or purchases that category of securities is also a qualified purchaser. But they did it here, and they didn't do it in any other context for—because they determined that the risks here were mitigated, particularly by their 10 percent rule. Well, Your Honor, I can address the 10 percent rule separately, but with respect to the 2B analysis, I think the commission's rule entirely violates Your Honor's holding in the Chamber of Commerce v. SEC case and Judge Sentelle's ruling in the American Equity Investment case. There was a very paltry assessment of the impact of this rule on investor protections. They essentially said, yes, this rule is going to harm investors by taking away state securities review. And they said many other parts of the rule could mitigate that impact. That is the extent of their economic analysis. Two paragraphs in the rule, it does not meet the standards that Your Honors have set forth in other cases involving the SEC. But with respect to the 10 percent investment limitation, that does not impose qualifications on purchasers. Quite the opposite. It applies only to those group of investors who do not meet the standard for accredited investors under Rule 501A. In other words, that subset of investors who, by the SEC's own analysis, aren't able to protect themselves and require the protection of securities law, the investment protection of securities law. The investment limitation that's applied here says they can invest too, but we're only going to let them lose 10 percent of their life savings on each particular offering. That's the opposite of a qualification on purchasers, A rule limiting the amount of losses that a vulnerable and unsophisticated investor can lose on a particular offering is not a qualification on who may invest in the first place. And I think Congress was very clear when it passed this. Congress could have when it passed Title IV of the JOBS Act. It could have categorically preempted all regulation of securities. That's what it did under Title III for so-called crowdfunding securities. But instead, when Congress looked at the high-risk, generally illiquid securities that are offered under Regulation A, it said, no, we're going to take a different approach here. We're going to allow preemption only in two narrow circumstances. One, when regulation of securities are sold on a national exchange, and two, when they're sold to qualified purchasers consistent with Section 18b-3 and the public interest in the protection of investors. So I think it was a very deliberate choice made by Congress here not to allow this kind of broad preemption that the Commission put into effect here. And I just would say that the idea that because the Commission has discretion, the Commission argues that, well, it has discretion to adapt its definitions to different categories of securities. And that's absolutely true. It can look at the particular risk profile or complexity to security and adjust a definition of qualified purchaser to match that. But this Court dealt with a very similar argument by the Commission in the 2007 case, Financial Planning Association v. SEC, where the Commission pointed to a provision that allowed to make exemptions under the Investment Advisors Act. And this Commission rejected the Commission's rule on that case under Chevron Step 1. And it said, quoting Brown v. Garner from the Supreme Court, ambiguity is a creature not of definitional possibilities but of statutory context. Here the statutory context is clear. Congress reserves the power to categorically preempt securities, preempt state law for categories of securities. The Commission's authority is limited to qualified purchasers. And that has the meaning that the term qualified has under the Investment Advisors Act, under the Investment Company Act, under other broker-dealing exemptions that the SEC applies, it's always meant that there has to be some degree of wealth, sophistication, or risk-bearing ability that identifies those investors as people who do not need the protections of state law. And I just, on top of our Chevron Step 1 argument, I just want to direct, remind the Court. The protections of state law, apart from preapproval, are still in place, correct? Well, Your Honor, the states provide a set of protections. They provide registration qualification requirements. They provide regulation of sellers, participants in the marketplace, and they have enforcement authority. Enforcement authority is left in place. But the state system relies on the entire set of powers. So this really is a dramatic change to how the states go about protecting people in their states and in neighboring states. And, of course, state regulators really have unique knowledge about local markets, about ‑‑ Which the SEC acknowledged with respect to fraud enforcement. That's right. It did. It did. It did acknowledge that they have the local knowledge of marketplace. It didn't acknowledge the other unique benefits of state review. I mean, it's important to acknowledge that state mirror review is not just a simple up or down approve-reject process. It's a process where regulators take a look at the offering. They improve the terms of the offering. They improve terms of the disclosure. They may require the company to implement a stronger conflict of interest policy. They may upgrade the risk disclosure. They may remove unsubstantiated claims of profitability or investment returns. These are very important protections that are needed by unsophisticated investors. And the commission's rule just takes them out entirely for this class of categories. This class of securities. So we think that this rule harms retail investors. It disrupts this longstanding system, the balance of power in the dual federal state system of regulating securities. The states have been involved in regulating securities far longer than the federal government. And it exceeds the authority that Congress gave to the commission, both in the 1996 Act and in the 2012 Jobs Act. And for those reasons, we think that this court should vacate the rule and direct the commission to develop a new rule that complies with the intent of Congress. Thank you, Mr. Chairman. Thank you. Thank you. May it please the court, Jeff Berger for the Securities and Exchange Commission. I do want to bring this back to the context of the Jobs Act, which was really only mentioned a few times. The importance of the Jobs Act is crucial here. Congress sought to revitalize Regulation A, which had fallen into disuse, in part because of the cost of complying with state registration and qualification laws. In implementing the mandate under the Jobs Act to the commission, the commission exercised its express authority under Section 18 to define the term qualified purchaser so as to preempt those exact state laws for Tier 2 offerings and only for Tier 2 offerings. This removed the main impediment to the use of Reg A while still protecting investors by, among other things, and there's a suite of protections requiring that an investor either be accredited or be subject to purchase limitations based on net worth or income. And I do think it is crucial to go to the actual provision that is the delegation of authority here, which is Section 18B4D. Sorry for all the letters. Where did we find it? What's that? I believe it's in the back of the petitioner's brief. And it was 18 what? 18B4D. That basically establishes a new category of covered security, and for preemptive purposes under Section 18, covered security is the term that initiates the preemption. And it says a security is a covered security with respect to a transaction that is exempt from registration under this title pursuant to a rule or regulation adopted pursuant to Section 3B2, and such security is, and I'm going to skip to Romanet 2, offered or sold to a qualified purchaser as defined by the commission pursuant to Paragraph 3 with respect to that purchase or sale. That is Congress's clear intent to delegate definitional authority to the commission. Yes. But wouldn't it seem that when Congress delegates the ability to define the term qualified purchaser, wouldn't we normally expect what the commission produces to give something about the qualifications of the purchaser rather than simply say in what kind of exchange they're buying, that is, a tier 2? Well, I think two responses to that question. One is Congress did tie the definition with respect to the purchase or sale of this particular class of securities. That's one in terms of Congress. That didn't answer my question. And in terms of what the commission did, it does reflect the characteristics of the purchaser. What characteristic of the purchaser is reflected in that definition? Net worth or revenue, the greater 10%, determines how much you. Where do we find that in the definition? That would be in Rule 256, sets up the definition, which then basically cross-references Rule 251, which sets limitations on sales. You either have to be an accredited investor. In order to. Which means you can buy however much you want, however many regular securities as you want, if you were a non-accredited investor. And the accredited investor definition is, in turn, borrowed from another rule. So what you're saying is this language about tier 2 essentially incorporates that by reference? That's correct. And I think the commission could have listed all. Well, I asked opposing counsel the question, if there were somewhere else that had some limitations on this tier 2 purchaser, and you told me there were not, then he was incorrect. I disagree with him. I think there are limitations. I think the commission could have listed all those limitations in 256 again instead of providing. But the effect of stating tier 2 as the level of purchase or offer effectively requires compliance with those qualifications by the buyer. That's absolutely correct. Thank you. Yes. And is it tied to the net worth of the revenue in the sense of if you're a non-accredited purchaser, you can only purchase up to a certain amount. You got my question answered. And I do want to mention that Reg A has always, until this rule, has always been available to everyone at any amount. So what the commission in defining qualified purchaser, I understand Petitioner's argument to suggest that we're sort of abandoning investor protection, but really what it's doing is doing multiple things. It's removing a layer of state review and a substantive merit review process, but in its place it's putting in other protections for investors, which include the purchase limitation I just mentioned. But there's other things as well. Well, then it helped a lot if the commission had simply put in the definition of qualified purchaser those requirements that you just tell me are dragged in through tier 2. I think the commission, I mean, yes, if the commission had repeated it, it probably would have clarified things even more. No, it would have clarified things. I wouldn't have had to ask you that question. That's true, Your Honor. What I was going to say is the commission was very, very clear in its release that that's exactly what it was doing. It repeated over and over that the reason it was comfortable with preempting state laws because of all the other protections afforded to investors here, which include not just the purchase limitation, but also crucial information flows in terms of a requirement that audited financials be provided with the offering circular. That's only for tier 2 securities. Tier 2 offers are also subject to ongoing reporting obligations, which is crucial not only in terms of protecting investors, but also in terms of revitalizing Regulation A. It increases the chance of equity, which helps both investors and issuers. It increases the chance that a secondary market can develop for these securities. It is all part of a plan to effectuate Congress's desire to reinvigorate Regulation A, which really had fallen into disuse. From 2002 to 2014, there were very few Reg A offerings. Congress, in adopting the JOBS Act, one thing it did was ask the GAO to produce a report that looked at the effect of state law on Reg A offerings. One of the things the GAO found, and it was echoed by many commenters to the commission, was that the role of state law, that substantive merit review process, added costs that dissuaded people from using Regulation A. This factored in very heavily to the commission's decision to define qualified purchaser in this way and to divide tier 1 and tier 2 into different types of offerings. And I think that's important because the states retain their full complement of laws. They always retain their anti-fraud authority for both tier 1 and tier 2 offerings. They are not preemptive at all for tier 1 offerings. That remains the same. Tier 1 offerings, because of their size, there's a lower offering limit, are more likely to be local in nature, at which point the abilities of the state to do what they do best in terms of doing that merit review function, that is where it's going to have the greatest marginal benefit in terms of investor protection, as opposed to tier 2 offering, which, because of their size, are likely to be more national in scope, where a consistent federal standard is best able to do the job. Did the commission address itself specifically to whether this revision or this rule would promote efficiency competition of capital formation? Yes, I think the commission did that extensively in its economic analysis and its economic consequences analysis. I mean, the entire sort of balance of tier 1 and tier 2 and the protections afforded to tier 2, as well as the preemptive aspect of the qualified purchaser definition, was viewed with an eye towards how can this promote capital formation opportunities for small business. Where is that? Specifically about the terms I just mentioned. In terms of the state law? No, about efficiency competition of capital formation. Sure. I mean, the analysis starts, and there's a pretty detailed description of the overall consideration of it, starting at JA 236. But I also think the consideration of efficiency competition of capital formation also repeats itself, albeit in more specific ways throughout descriptions of what each individual parts of the rule do. So, for instance, there's a description of some of these considerations of efficiency competition of capital formation, as also considered alongside investor protection in relation to the discussion of the relationship with state law. That begins at JA 258. Sorry, I know I just threw a couple different sites at you, but I mean, throughout this section of the brief, excuse me, the section of the release, the commission is describing how it can increase capital formation opportunities for small businesses by reducing disincentives to use of Regulation A while trying to increase liquidity, while trying to increase the possible universe of people who can buy these things. If it's only accredited investors who can buy Reg A securities, you are dramatically shrinking the universe of potential buyers, which can affect liquidity, which can affect the availability of a secondary market. The commission is constantly considering all of these factors. Now, Petitioner's Counsel, my friend, suggested that the commission sort of just ignored investor protection or sort of brushed it aside. I don't agree with that. The commission considered investor protection alongside the other aspects that Congress mandated the commission consider, efficiency, competition, capital formation. And while I don't want to suggest that it balanced it, because balancing almost describes a dichotomy between investor protection and capital formation, when, in fact, in this context, they're very interlinked, it considered all that and came up with a rule that it thought would best fulfill the goals of the Jobs Act in terms of revitalizing Regulation A while still protecting investors in light of the removal of state protection. The commission acknowledged that what it was doing was removing a layer of protection for investors, but it felt that the other requirements for Tier 2 offerings substituted in its place other investor protections that would fill the gap. If you guys have no further questions, the rule should be upheld. Thank you, Mr. President. Thank you. Thank you, Your Honor. And I just can't emphasize this point enough. Judge Sentel, if this rule said only accredited investors can invest in Tier 2 securities, the preempted category of securities, we would not be here today. But that's not what it says. It says everyone can be accredited investors and people who are in credit. What it says is, and correct me if I incorrectly paraphrase this, it says that a qualified purchaser is one who is either offered or buys in a Tier 2. That's right, any person. All right. Now, if the regulations or laws elsewhere provide that you can't buy in a Tier 2 unless you meet certain criteria, then why doesn't this, at least by implication, adopt those criteria for the definition of qualified purchaser? It's a great question, Your Honor. It doesn't say that. I know it doesn't say that. But if it's the case that elsewhere in the rules such a specificity exists for Tier 2 purchase, then why isn't that, at least by implication, an adoption of that criteria, those criteria for it? Yes, and most certainly would satisfy that requirement if it said elsewhere in the rule. We're not arguing about that kind of formal difference. The point is, elsewhere in the rule, it says you can be a purchaser under Tier 2 if you are a credit investor or if you're not a credit investor. In other words, everybody gets to invest. If you're not a credit investor and meet certain criteria. Then you can only invest up to 10 percent of your income or net worth. So the investment limitation case. But you can invest if you're not a credit investor. And this is the category of people who are vulnerable and unsophisticated. They are allowed to invest. It's this different – If they expressly said in the rule that a qualified investor is somebody who meets the criteria laid out in the regulations concerning Tier 2 transactions, that is to say they couldn't invest more than 10 percent of their income or they – would that not be within the discretion given to the commission under the statute for purposes of our Chevron review? Absolutely. If Congress had said, told the commission, listen, come up with the best set of offering terms and conditions – No, no, no, no. Congress did what they did. They did what they – Because that's the statute we've got. And we have in steady regulation that says just a little more than this one. Instead of saying offered or bought in a Tier 2, it said offered or bought in a Tier 2 and meets the criteria required for a Tier 2 and set forth those criteria. Would that not be within our Chevron definition? And didn't use the word qualified purchaser? It's defining qualified purchaser. If it defined a qualified purchaser and took it out of the meaning that it has under plain language and the other statutory context – Never mind the plain language and all of that. Yes. You've got a statute. You have a positive regulation that instead of using the words in the present regulation says was offered or bought in a Tier 2 and the purchaser meets the criteria necessary to participate in a Tier 2. Why would that not be within their discretion under Chevron? As I understand, I think that would be giving the commission discretion to come up with this kind of approach. But, of course, that's not what Congress did. Congress actually imposed – I don't know what the commission did. It's what the commission – I know what Congress did. Just in Title 3, Congress actually did impose investment limitations for crowdfunding securities. It didn't mention investment limitations in Title 4. And it said you have to be a qualified purchaser. And so I just can't stress enough the idea that you don't have to satisfy the investment limitation if you're an accredited investor. Did you say that opposing counsel misstated anything concerning what he told me about Tier 2? I would respectfully say you cannot say that this is limited to accredited investors because that's just not what it was. Don't talk about his conclusion. Talk about just what he told me. I disagree with that characterization, as I understand it. What do you say was wrong with what he told you? My understanding was he said that the commission essentially defines qualified purchaser to mean accredited investor. Go back to what he told me about what Tier 2 says – what is required to participate in Tier 2. Did he tell me anything wrong about that? Beyond what I just said, Your Honor, I don't recall any of the statements there. But I just have to say that the features provided that the commission points to, the various features for auditing financial filing requirements and the investment limitation, none of it adds up to a qualification on who may invest in these securities in the first place. And that is clearly what Congress intended. And I think to allow – to uphold this rule would give the commission a green light to disregard other statutory directives with similar clarity. Thank you, Mr. Chairman. Thank you, Your Honor. Thank you all. Case is submitted.
judges: Henderson, Ginsburg, Sentelle